State, use of Janney *vs.* Housekeeper and Gifford.

> *Judgment reversed, and*
> *new trial awarded.*

(Decided 10th January 1889.)

STATE OF MARYLAND, use of MARY R. JANNEY and
MARGARET O. JANNEY, infants, by their next friend
JOHN N. JANNEY, and JOHN N. JANNEY *vs.* PHILIP
B. HOUSEKEEPER and DAVID L. GIFFORD.

*Physicians and Surgeons — Surgical operation upon a
Married woman — Presumption of Consent of Patient
to Operation—Burden of Proof—Presumption—Liability
for Death—Degree of Care and Skill.*

To justify a surgical operation upon a married woman, her consent
and not that of the husband is necessary.

A married woman cannot be compelled to submit to an operation;
but if she voluntarily submit to its performance her consent will
be presumed, unless she was the victim of a false and fraudulent
misrepresentation, which is a material fact to be established by
proof.

If in an action for damages against physicians for having caused, as alleged, the death of a married woman by a surgical operation, the plaintiff alleges there was no consent to the operation on the part of the patient, he must establish his allegation by affirmative proof; and he must also show that the death was caused by the unskillful and careless treatment of the defendants.

If death was caused by disease not produced by the operation, the defendants are not liable.

And even if the disease resulting in death was caused by the operation, the defendants are not liable if they performed the operation with the patient's consent, in a careful and skillful manner, and under the belief that it was proper to be performed.

The party who allows a surgical operation to be performed, is presumed to have employed the surgeon for that particular purpose; and it will be presumed that the operation was carefully and skillfully performed, in the absence of proof to the contrary.

The degree of care and skill required in the performance of a surgical operation, is that reasonable degree of care and skill that physicians and surgeons ordinarily exercise in the treatment of their patients.

Appeal from the Circuit Court for Harford County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the five following prayers:

1. If the jury believe that the defendants cut off the breast of Mrs. Matilda C. Janney, in consequence of which she died, as mentioned in the first count of the declaration, then the plaintiff is entitled to recover in this action, unless the jury further find that said breast was cut off by the consent of the husband and of said Matilda C. Janney, and the burden of proof is upon the defendants to satisfy the jury by preponderance of evidence that said consent was given.

2. If the jury find from the evidence that Mrs. Matilda C. Janney had a tumor in her breast, and that she and her husband consulted the defendant, House-

keeper, in regard thereto, and the said Housekeeper told them that it was a simple tumor and that it was not a cancer, and that the same could be removed from her breast by a simple incision of the breast over said tumor, and that the said tumor could thereby be removed and taken out from said breast, and that said operation was a very simple one, and would not occupy more than fifteen or twenty minutes, and that she would be well in a week or ten days thereafter, and that said Matilda C. Janney and her husband, relying upon said representations, consented to said operation; and if the jury further believe that said Matilda C. Janney, for the purpose of allowing the defendants to perform said operation, permitted them to put her under the influence of ether or chloroform, and that while under the influence of said drugs, the defendants, without notice of their intention to the said Matilda C. Janney, or her husband, and without their consent, or the consent of either of them, cut off her breast, and that in consequence thereof she died, the said defendants are liable in this action.

3. If the jury find that the defendants cut off the breast of Matilda C. Janney, in consequence of which she died, as stated in the preceding prayer, then the burden of proof rests upon the defendants to satisfy the jury by a preponderance of evidence that the said Matilda C. Janney or her husband had given their consent to said operation.

4. If the jury believe that the defendants were surgeons and physicians, and as such undertook to treat Matilda C. Janney for a tumor, and entered upon said treatment, then they were bound in the performance of their said undertaking to possess and exercise reasonable care and skill; and if the jury believe that the defendants did not possess reasonable skill as such surgeons and physicians, or if possessing such skill,

they failed to exercise both skill and care in their treatment of the said Matilda C. Janney, in consequence of which she died, then the defendants are responsible in this action; and defendants' duty under the said employment was not confined to the mere operation of cutting said tumor, but extended to all proper medical examinations preparatory to said cutting, and all subsequent treatment thereof.

5. The reasonable skill and diligence mentioned in the preceding prayers, which the defendants were bound to exercise, are such skill and diligence as thoroughly competent surgeons ordinarily employ; and in judging of this degree of skill in a given case, regard is to be had to the advanced state of the profession at the time, and the patient is entitled to the benefit of these increased lights, but the surgeon or physician is not bound to possess or exercise extraordinary skill, or to guarantee a cure.

The defendants offered the four prayers following:

1. If the jury find from the evidence that the defendant, Philip B. Housekeeper, was requested by the equitable plaintiff, John N. Janney, or Matilda C. Janney, to remove a tumor from the breast of said Matilda C. Janney, and that said defendant, Philip B. Housekeeper, with the assistance of the defendant, David L. Gifford, and H. H. Mitchell, in pursuance of said request, did attend upon the said Matilda C. Janney, and did remove a tumor from the breast of the said Matilda C. Janney, and that the said tumor was removed with ordinary care and skill, and was an operation reasonably proper to be performed, then their verdict must be for the defendants in this case, unless that they find that the consent of the said Matilda C. Janney to the removal of said tumor was obtained by misrepresentation or deceit. And that if the said Matilda C. Janney, at any time before the operation,

with knowledge of what was proposed, consented to the same, and that the operation was reasonably proper to be performed, and was performed with ordinary care and skill, then the defendants are entitled to a verdict.

2. If the jury believe from the evidence that the said Matilda C. Janney died of tubercular meningitis, or any other disease, and that said tubercular meningitis or other disease was not caused or contributed to by the operation performed upon her breast, as mentioned in the evidence, then their verdict must be for the defendants, and the burden of proof rests upon the plaintiff to show by a preponderance of the evidence that the death of the said Matilda C. Janney was caused by the said operation.

3. That the degree of care and skill to be exercised by physicians and surgeons in the performance of an operation is not the highest degree of care and skill known to the profession, but that reasonable degree of care and skill which physicians and surgeons ordinarily exercise in the treatment of their patients; and the burden of proof is on the plaintiffs in this case to establish by preponderating evidence a want of such ordinary care and skill in the performance of the operation and attendance upon the said Matilda C. Janney.

4. If the jury believe from the evidence that the said Matilda C. Janney died from tubercular meningitis, or any other disease, then their verdict must be for the defendants, even though they further find that she had been operated upon for a tumor sometime prior to her decease, and that said operation caused or contributed to produce the disease of which she died; provided they further find that the defendants are physicians and surgeons of ordinary care and skill, and that they performed said operation with her consent,

under the belief that it was reasonable and proper to be done, and that in its performance they exercised ordinary care and skill, and that the said Matilda C. Janney received from the defendants, or either of them, reasonable care and attention both prior to and subsequent to said operation.

The defendants also offered a fifth and a sixth prayer, which were rejected, and need not be inserted.

The Court (WATTERS, J.) granted the plaintiffs' second and fourth prayers, and rejected their first, third and fifth prayers; and granted the defendants' first, second, third and fourth prayers.

The plaintiff excepted, and the verdict and judgment being against it, this appeal was taken.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, ROBINSON, IRVING, and McSHERRY, J.

*Albert Constable,* for the appellant.

*Charles C. Crothers,* and *John W. Falls,* for the appellees.

When absence of consent is necessary to be shown, the party alleging it must establish the same by proof. *Rex vs. Rogers,* 2 *Camp.,* 654; *Rex vs. Hawkins,* 10 *East,* 211; *Rex vs. Hazy and Collins,* 2 *C. & P.,* 458; *Rex vs. Stone,* 1 *East,* 639; *Evans vs. Birch,* 3 *Camp.,* 10.

If the defendants had performed this operation without the consent of the deceased, they would have been guilty of a technical crime, and it is now well established, that in civil cases, where to support the plaintiff's case a criminal act must be shown upon the part of the defendant, he, the defendant, can rely upon the presumption of innocence which the law establishes in his favor. *Taylor's Evidence, Text Book Series, vol.* 7 *and* 8, *p.* 133.

The defendants' third prayer properly states the degree of skill and care required. *Lanphier vs. Phipos,* 8 *C. & P.,* 475; *Hitchcock vs. Burgett,* 38 *Mich.,* 512; *Hathorn vs. Richmond,* 48 *Vermont,* 557; *Rich vs. Pierpont,* 3 *Foster & Fin.,* 35; *McNevens vs. Lowe,* 40 *Ill.,* 209; *Wood vs. Clapp,* 4 *Sneed,* 66; *Patten vs. Wiggin,* 51 *Me.,* 594.

The defendants' fourth prayer likewise properly lays down the degree of care and attention of physicians and surgeons, viz., that they are justified in acting upon their belief, after giving their case reasonable care and attention, and that they are not responsible for mere errors of judgment or for failure to perform a cure when ordinary skill and care upon their part has been exercised. *Lanphier and Wife vs. Phipos,* 8 *C. & P.,* 475; *Hanke vs. Hooper,* 7 *C. & P.,* 81; *Wood vs. Barker,* 49 *Mich.,* 298; *Hitchcock vs. Burgett,* 38 *Mich.,* 512.

YELLOTT, J., delivered the opinion of the Court.

An action for damages was brought against the appellees who are physicians residing in Cecil County. It is alleged in the declaration that they caused the death of one Matilda Janney, by unskillfully or wrongfully performing a surgical operation. The action was brought in the name of the State for the benefit of the appellants, one of whom was the husband, and the others were the children of the deceased. Under the provisions of Art. 67, of the Md. Code, if the death is caused by the wrongful act, neglect, or default of the defendant a suit may be instituted for the benefit of the husband, wife, parent or child of the deceased.

The evidence shows that the deceased had been afflicted by the formation of a lump in her right breast. It was supposed at first to be a tumor, but afterwards ascertained to be a cancer. The defendant,

Housekeeper, a regular physician, was consulted and advised a surgical operation. A day for the performance of the operation was appointed, and the two defendants and another physician were present and performed the operation by cutting off the entire right breast. The operation was performed about the first of June, and the death occurred on the 5th of December following, and is not attributed with any degree of certainty to the effects of the surgical operation. Some portions of the evidence tend to prove that the wound caused by the surgical instruments was entirely healed, and that death was produced by tubercular meningitis. In the conflict of testimony this was a fact to be determined by the jury. The husband of the deceased, who is one of the equitable plaintiffs, relies upon the fact that although he expressed a willingness that there should be an operation for a tumor, he did not consent to the excision of a cancer. He says that he told Dr. Housekeeper that if the formation in the breast was a cancer, he objected to its removal. His own testimony shows that he assisted the physicians in preparing to perform the operation, and though not in the room where it was performed, was near at hand. He says he supposed that the medical men were operating for a tumor, and that he would not have consented to an operation for a cancer. There is evidence from which a jury might infer that the patient knew that the formation in her breast was a cancer. When the doctors came to the house she had already prepared herself to undergo the operation. If she consented to the operation the doctors were justified in performing it, if after consultation they deemed it necessary for the preservation and prolongation of the patient's life. Surely the law does not authorize the husband to say to his wife, you shall die of the cancer; you cannot be cured, and a surgical

operation affording only temporary relief, will result in useless expense. The husband had no power to withhold from his wife the medical assistance which her case might require. *Harris vs. Lee*, 1 *P. Wms.*, 482; *Mayhew vs. Thayer*, 8 *Gray*, 172.

As was said by the Supreme Court of Michigan in the recent case of *Carsten vs. Hanselman*, 61 *Mich.*, 426: "It would be a cruel rule for her, if she cannot in his absence, at least, or in his presence, if he does not himself provide for her, make. a binding agreement for any necessaries, whether articles to be purchased, or professional help, without becoming a public charge. It is not to be expected that physicians and surgeons will always feel bound to render gratuitous treatment to injured persons, and when the occasion is pressing, it would be unreasonable to delay until an absent husband is communicated with to learn whether he consents or refuses to assume her contracts. Time will not allow minute inquiries, and humanity will not prompt them. It seems to us that no sensible line can be drawn between contracts for food and clothing, and contracts for medical aid."

The consent of the wife, not that of the husband, was necessary. The professional men whom she had called in and consulted, being possessed of skill and scientific knowledge, were the proper persons to determine what ought to be done. They could not, of course, compel her to submit to an operation, but if she voluntarily submitted to its performance, her consent will be presumed, unless she was the victim of a false and fradulent misrepresentation, which is a material fact to be established by proof. The Court below was therefore right in rejecting the first and third prayers of the plaintiffs, which place the burden of proof in regard to consent on the defendants. If the plaintiff alleges that there was no consent, he must establish

his affirmation by proof. The party who allows a surgical operation to be performed is presumed to have employed the surgeon for that particular purpose. *Gladwell vs. Steggall,* 5 *Bingh. N. C.,* 733.

It was the duty of the professional men to exercise ordinary care and skill, and this being a duty imposed by law, it will be presumed that the operation was carefully and skillfully performed in the absence of proof to the contrary. As all persons are presumed to have duly performed any duty imposed on them, negligence cannot be presumed, but must be affirmatively proved. *Best on Presump.,* 68; *Jacksonville Street R. Co. vs. Chappell,* 21 *Fla.,* 175.

This principle is especially applicable in suits against physicians and surgeons for injuries sustained by reason of alleged unskillful and careless treatment. The burden of proof is on the plaintiff to show a want of proper knowledge and skill. *Leighton vs. Sargent,* 31 *N. H.,* 119, (11 *Foster;*) *Baird vs. Morford,* 29 *Iowa,* 531.

The Court below committed no error in determining that it was incumbent on the plaintiff to prove affirmatively that the operation was performed without the consent of the patient, and also that her death was caused by unskillful and careless treatment of the physicians. Nor did the Court commit any error in granting the defendants' second prayer, which enunciates the proposition that if death was caused by tubercular meningitis or other disease not produced by the operation, the defendants are not liable. The defendants' fourth prayer is also correct, and was properly granted. In it the jury are told that even if the disease resulting in death was caused by the operation, the defendants are not liable, if they performed said operation with the patient's consent in a careful and skillful manner, and under the belief that said operation was proper to be performed. In the defend-

ants' third prayer the jury are told that the degree of
care and skill required is that reasonable degree of
care and skill which physicians and surgeons ordina-
rily exercise in the treatment of their patients, and
that the burden of proof is on the plaintiffs to estab-
lish the want of such skill and care in the performance
of the operation and attendance on the deceased while
under treatment. There was no error in granting this
instruction. It is proper to add, that there was no
evidence in the cause to sustain the plaintiff's case as
stated in the first count of his declaration.

Finding no error in any of the rulings of the Court
below, its judgment must be affirmed.

*Judgment affirmed.*

(Decided 10th January, 1889.)